UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO:

**VIRGINIA HUSSEY,**
　　　　**Plaintiff**

**v.**

**EAST COAST SLURRY CO., LLC;
INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 4; AND SUFFOLK
CONSTRUCTION COMPANY, INC.**

　　　　**Defendants.**

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.　　The Plaintiff, Virginia Hussey (hereinafter "Ms. Hussey") brings claims for unlawful discrimination based on sex, sexual harassment, and retaliation pursuant to Mass. Gen. Laws c. 151B and 42 U.S.C. § 2000 et seq. (Title VII) against the above-named Defendants, who were Ms. Hussey's employer, supervisor, and/or union.

### PARTIES

2.　　East Coast Slurry Co., LLC ("East Coast Slurry"), is a Massachusetts corporation with a principal place of business at 145 Island Street, Stoughton, MA 02072.

3.　　International Union of Operating Engineers, Local 4, is a labor organization that has a principal place of business at 16 Trotter Drive, Medway, MA 02053.

4.　　Suffolk Construction Company, Inc. is a Massachusetts corporation with a principal place of business at 65 Allerton Street, Boston, MA 02119.

1

**JURISDICTION**

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as this case involves a federal question, namely a claim brought pursuant to the Civil Rights Act, 42 U.S.C. §2000e et seq.  Supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367.

6.      Ms. Hussey has exhausted her administrative remedies by filing a complaint with the Massachusetts Commission Against Discrimination before filing this suit and withdrawing same on August 4, 2020.

**FACTS**

*The Apprenticeship Program*

7.      Ms. Hussey was an apprentice with the Local 4 International Union of Operating Engineers' ("Local 4") Apprenticeship and Training Program (the "Apprenticeship Program") and was training to become a fully licensed hoisting and portable engineer in the construction trade.

8.      The Apprenticeship Program lasts four years and is a mix of on-the-job training/work, in classroom lectures, and state testing/licensing.

9.      As part of the Apprenticeship Program, apprentices are responsible for receiving various licenses and certifications.

10.      For example, during the first year of the Apprenticeship Program, apprentices are responsible for obtaining the following certifications/licenses:   CPR/First Aid; Commercial Driver's License Permit; Commercial Driver's License; D.O.T. card; Forklift certificate; Hazmat 40-hour certificate; Hoisting Apprentice License; O.S.H.A. 10-Hour certificate.

11.      In her first year, Ms. Hussey obtained all of her required licenses and received top scores on nearly all of her classroom examinations.

12.     In fact, Ms. Hussey was routinely regarded as one of the best apprentices within the Apprenticeship Program.  During her first year, Ms. Hussey was selected to speak at a Local 4 rally in the City of Somerville and was selected by Local 4 to speak on behalf of the Boston Building Trades at the State House in Boston.  As far as Ms. Hussey is aware, she is the only apprentice ever allowed to participate in Local 4 activities of this nature.

13.     As part of the Apprenticeship Program, Local 4 works with approved companies in Massachusetts to provide on-the-job training for its apprentices.  The approved companies then hire the apprentices directly and the company becomes the apprentice's employer.  The company can then send the Local 4 apprentices to any jobsite in Massachusetts at which Local 4 is working.

14.     As a result, an apprentice at a jobsite is supervised by several people: the jobsite supervisor/steward, the company supervisor, and the Local 4 leadership.  Additionally, as the lowest level employee on a job site, an apprentice is required to defer to the instructions and expertise of his or her superiors.

15.     During her first year Ms. Hussey was assigned to East Coast Slurry for on-the-job training. East Coast Slurry therefore became Ms. Hussey's employer.  East Coast Slurry remained Ms. Hussey's employer at all times relevant to this Complaint.

16.     During her second year, East Coast Slurry sent Ms. Hussey to various job sites including several operated by Suffolk Construction.

17.     The harassment in question all occurred during Ms. Hussey's on-the-job training at Suffolk Construction jobsites while she was employed by East Coast Slurry.

18.     Pursuant to the Apprenticeship Regulations and Policies, the "instructors, employees, apprentices, journey members and cooperating contractors are expected to conduct themselves in a professional manner with concern and respect for any individual using the Engineers Training

Center. Discrimination and harassment are unacceptable and will not be tolerated. Such harassment includes verbal or physical attacks, unwanted or unsolicited remarks, gestures or physical contact."

### *Harassment at Suffolk Construction*

19.     In September 2018, an East Coast Slurry employee and fellow member of Local 4, Bobby Atkins, began asking Ms. Hussey out on dates.   By way of example, on one occasion he asked her to be on his golf team for Local 4's 2018 Golf Tournament that was to be held that November. The invitation went along the lines of:  "You can be part of our foursome. Get your mind out of the gutter lol."  Ms. Hussey politely declined the invitation.

20.     In or around January of 2019, Ms. Hussey was sent to a Suffolk Construction jobsite at Winthrop Square in Boston to put together a specialty machine known as the hydro mill.   Mr. Atkins was also at this site working as the hydro mill operator.  While on site Mr. Atkins would touch Ms. Hussey's shoulders and rub her hair.  She asked him to keep his hands to himself on multiple occasions, but the conduct continued.

21.     On February 14, 2019, while on site, Ms. Hussey was resting in the crew resting area because she had a headache.  She was sitting on a bench with her head down on a table.  Mr. Atkins approached her from behind and began stroking her from under her armpits down to her hips and back multiple times.  Ms. Hussey immediately yelled at him to stop.  There were several witnesses to this event.

22.     Ms. Hussey immediately reported Mr. Atkins' behavior through her chain of command: first, to Craig Cunningham (the operator of her machine); second, to Tim Walker (the onsite steward for Local 4); and third, to Michael Bowes (the Local 4 President).  Ms. Hussey also informed the Suffolk Construction safety officer of the harassment.

23.    Upon learning of her complaint, Mr. Atkins also called the Local 4 President, Michael Bowes.

24.    In response, the Local 4 President, Michael Bowes, asked Ms. Hussey to keep the incident that transpired on February 14, 2019 "between them" and to "not make a big deal about it" because he said he would take care of the situation.

25.    In addition to being the Local 4 President, Michael Bowes sat on the Board of Trustees for the Apprenticeship Program and was Local 4's Business Agent.  As Business Agent, Michael Bowes has the authority to assign or remove a union member from any jobsite.

26.    Ms. Hussey felt that her job was under siege when Mr. Atkins contacted Michael Bowes because Mr. Atkins told her that he had over 25 years of experience with Local 4 and that no one would believe her since she was brand new.

27.    Though Ms. Hussey reported the harassment to Craig Cunningham, Tim Walker, Michael Bowes, and the Suffolk Construction safety officer, nothing was done to stop it.

28.    Because nothing was being done to stop the harassment, on or about February 28, 2019, Ms. Hussey reached out to East Coast Slurry's Human Resource Representative and lawyer, Alexis Dunn.  Ms. Hussey reported the harassment that was happening on the jobsite and requested an in-person meeting to discuss her concerns.  A meeting was scheduled for nearly a month later, on March 20, 2019.

29.    Between the time Ms. Hussey requested the meeting with East Coast Slurry's Human Resources and when the meeting actually took place, the harassment continued.

30.    For example, on one occasion in March 2019, Ms. Hussey was speaking to Tim Walker about a separate matter when Mr. Atkins walked over and told her to "Shut up and to only speak when spoken to because you are just an apprentice" or something along those lines.  Tim Walker

immediately chastised Mr. Atkins for the comments and reported the incident to Michael Bowes. Michael Bowes did not do anything to stop the harassment.

31.     Instead, Michael Bowes told Ms. Hussey to remain inside the cab of her machine for her entire shift and not to talk to anyone.  Ms. Hussey followed these instructions.  Additionally, he told her it was very difficult to get Mr. Atkins removed because "there are steps to getting a union member released from a jobsite that have to occur."   Michael Bowes also mentioned that it "may be easier to get rid of you then to pass you around jobsites until we find one that would be free of harassment" or words to that effect.   The impression was given that because Ms. Hussey was a woman that she was the cause of the problems and that the best solution would be to force her out rather than deal with the discriminatory conduct on the jobsite.

32.     During this time period, when he came to a jobsite Michael Bowes would sometimes offer his jacket to Ms. Hussey or make comments like "you're going to take over my job one day, aren't you?"  Ms. Hussey would always politely respond that she was not looking to take over his job and that she was just looking to work alongside him.

33.     Even though Ms. Hussey followed Michael Bowes' instructions to remain in the cab of her machine for her entire shift, Mr. Atkins still found a way to harass her.  On one occasion, Mr. Atkins waited until Tim Walker left the jobsite and then approached Ms. Hussey's machine (while she was still inside the cab, per Michael Bowes' instructions), opened the cab door, and told her that she should not be working on that particular machine because she could not possibly know what she was doing.  He then proceeded to "quiz" her about the machine in a condescending manner.  Ms. Hussey replied correctly to each question posed by Mr. Atkins.  Nonetheless, Mr. Atkins replied "I don't care, you still don't know what you're doing" before slamming the cab door shut and storming away.

34.     On another occasion, Mr. Atkins made comments that Ms. Hussey should not be in the trade at all because she is a woman and she would have to try twice as hard to even get noticed.

35.     Despite her continued efforts to avoid Mr. Atkins, on another occasion in March 2019 Mr. Atkins approached Ms. Hussey from behind and shoved her.   This was now at least the third time that Mr. Atkins had physically assaulted her.   Ms. Hussey felt that Mr. Atkins did this in an attempt to get a reaction from her so that he could report her and get her fired from the jobsite.

36.     Every time she complained about Mr. Atkins' behavior Ms. Hussey was told that Mr. Atkins had been in Local 4 for over 25 years and that, in the end, no one would take her side over his.

37.     Because of these and other incidents like them, Ms. Hussey was constantly in a state of fear on the jobsite and would be forced to tears because of the harassment.

38.     Approximately one month after Ms. Hussey requested a meeting to discuss the harassment, Alexis Dunn and Ms. Hussey finally met for lunch.   Ms. Hussey told Alexis Dunn about the harassment by Mr. Atkins.

39.     Even then, East Coast Slurry took no action to protect Ms. Hussey.   Instead, Alexis Dunn stated in reference to Mr. Atkins that: "We plan to take him off the job, but it takes time with the union process" or words to that effect.   Ms. Dunn advised Ms. Hussey that she should just not talk to anyone and keep to herself on the jobsites.   No solution was offered to remedy the on-site harassment from Mr. Atkins.

40.     Eventually, after nearly four months harassment, Mr. Atkins was replaced by another operator named Henry L/N/U.

41.     Henry also began asking Ms. Hussey out on dates.   In his first three weeks, he asked Ms. Hussey out on four separate occasions.   Despite being told no and having learned why Mr. Atkins

was replaced, Henry continued to ask Ms. Hussey out on dates and comment on her looks.  Tim Walker witnessed some of these incidents and reported the conduct to Michael Bowes.

42.     In response, Michael Bowes told Ms. Hussey that "she was a pretty woman and that he didn't know what he was going to do with her because all these guys are going to keep hitting on her."

43.     Despite having knowledge of these events as the general contractor, Suffolk Construction took no action to ensure that its jobsite was free from harassment.

44.     Because of the constant harassment she was facing, Ms. Hussey mistakenly forgot to schedule her 4B hoisting license test.  Upon being told about it by a fellow classmate, she immediately sent in an application and took the test with no study material.  She received a score of 68 but needed a 70 to pass.  She applied and took the test again but still received a 68.  This occurred in approximately June/July of 2019.

45.     When an Apprenticeship Program instructor, Tom McEvoy, asked Ms. Hussey why she was behind on her hoisting licenses, Ms. Hussey reported that she was being assaulted verbally and physically at her jobsites and that this had affected her scores.  He stated he did not care as to the reasons and that she should just take the test again.  This incident was witnessed by another female apprentice.  Mr. McEvoy did not do anything to stop the harassment.

46.     Michael Bowes told Ms. Hussey not to worry about failing the 4B test because of everything she was going through and that he would see to it, as a Trustee of the Board, that she could take the test again.  In order to do so, though, he told her she needed to appear before the Board of Trustees and indicate that she took full responsibility for her failing score and that, if given the opportunity to take the test again, she would pass.

47.     On August 27, 2019, Ms. Hussey met with the Board of Trustees.  When the Board asked Ms. Hussey why she did not have her 4B license, Ms. Hussey began to cry and described how she was sexually and verbally assaulted on the jobsite during her entire second year.  The Board of Trustee members looked shocked and confused.

48.     Michael Bowes immediately interrupted to say that he handled the situation and that they were there today to discuss Ms. Hussey's shortcomings and individual ownership of her failing score.  At that point, Ms. Hussey broke down and could no longer offer an effective defense to the Board.

### *Retaliatory Termination*

49.     The next day, August 28, 2019, Ms. Hussey was back on the jobsite in her machine cab. Michael Bowes walked on the jobsite and requested that they talk.  He shook Ms. Hussey's hand and said, "Good morning, I want you to know that we voted, and you will be dismissed from the Local 4 Union and today is your last work day."

50.     Because Ms. Hussey was no longer a Local 4 Union Member, East Coast Slurry dismissed her from employment.

51.     Ms. Hussey was terminated from the Apprenticeship Program, even though she already had acquired her Third Year Apprentice License.

52.     The stated reason for her termination was that Ms. Hussey violated the regulations of the program by not obtaining her 4B license and further that she violated a previously signed disciplinary agreement by not obtaining her 4B license.

53.     By way of background, when Ms. Hussey first started with the Apprenticeship Program, she was working for A.A. Will Corporation.  A.A. Will Corporation at some point thereafter transferred Mr. Hussey's employment to East Coast Slurry.  Though an apprentice is required to

file a "status filing" with Local 4 to report any employment change, Ms. Hussey did not file one

after being transferred to East Coast Slurry because she thought East Coast Slurry and A.A. Will

Corporation were the same employer because they were run by the same people and had the same

business address.  In any event, because she did not file a "status filing" regarding the employment

change, Ms. Hussey signed a disciplinary agreement on April 17, 2018.  According to the

agreement, Ms. Hussey agreed to abide by all rules and regulations in the future.

54.     Now, Local 4 is claiming that Ms. Hussey violated her disciplinary agreement by failing

to obtain her 4B license in a timely fashion.  This is just a pretext for discrimination.

55.     Other members of the Apprenticeship Program did not have up to date licensing and were

allowed to remain in the program.  This included an individual who was in her third year of the

Apprenticeship Program who never obtained the CDL license that was required to be obtained in

her first year.

56.     Moreover, other members of the Apprenticeship Program would be allowed to take tests

as many times as possible until they passed.

57.     The day she was dismissed from Local 4, the Apprenticeship Program instructor, Mr.

McEvoy, told Ms. Hussey that she had "always been a problem" and that she could not possibly

really care about the harassment because she had elective plastic surgery in the past.  Mr. McEvoy

also called Ms. Hussey's parents and told them not to believe anything she said about the

harassment.

58.     The Apprenticeship Program has an anti-harassment policy which required on-the-job

harassment to be investigated and reported to the Local Union Business Manager.  Ms. Hussey

reported the harassment she had been facing directly to Local 4 President Michael Bowes.  Though

Michael Bowes told Ms. Hussey on several occasions that he would handle the situation, he never reported it to the Local Union Business Manager, as required by the anti-harassment policy.

59.     Because Michael Bowes did not follow proper procedure, he interrupted and shut down Ms. Hussey while she was telling the Board of Trustees about the harassment that she had been experiencing.

60.     Further, Ms. Hussey was dismissed from Local 4 upon the recommendation of Michael Bowes as a cover for his failures to prevent the harassment and follow proper protocols.  Michael Bowes wanted Ms. Hussey dismissed from Local 4 (and, as a necessary consequence, from the Apprenticeship Program), in retaliation for her reporting to the Board of Trustees the harassment that she had been facing and for continuing to report the harassment of male coworkers at her job sites.   By exposing the harassment that she had been facing to the Board of Trustees, Ms. Hussey exposed that Michael Bowes had done nothing about it.

61.     Mr. Atkins remains an active member of Local 4.

## Count I
### (Discrimination in violation of Title VII against all Defendants)

62.     Ms. Hussey repeats and incorporates by reference paragraphs 1 through 61 as if set forth fully herein.

63.     By the actions described above, Defendants are in violation of Title VII and discriminated against Ms. Hussey on the basis of her sex.

WHEREFORE, Ms. Hussey requests that judgment be entered in her favor and that relief be granted her as available at law including but not limited to awards for compensatory damages, punitive damages, emotional damages, costs, attorneys' fees, and additional relief as the Court deems fitting as available under the law.

**Count II**
(Discrimination in violation of G.L. c. 151B, §4(1) against all Defendants)

64.     Ms. Hussey repeats and incorporates by reference paragraphs 1 through 63 as if set forth fully herein.

65.     By the actions described above, Defendants are in violation of 151B and discriminated against Ms. Hussey on the basis of her sex.

        WHEREFORE, Ms. Hussey requests that judgment be entered in her favor and that relief be granted her as available at law including but not limited to awards for compensatory damages, punitive damages, emotional damages, costs, attorneys' fees, and additional relief as the Court deems fitting as available under the law.

**Count III**
(Discrimination in violation of G.L. c. 151B, §4(2) against Local 4)

66.     Ms. Hussey repeats and incorporates by reference paragraphs 1 through 65 as if set forth fully herein.

67.     By the actions described above, Defendant Local 4 is in violation of 151B1, §4(2).

        WHEREFORE, Ms. Hussey requests that judgment be entered in her favor and that relief be granted her as available at law including but not limited to awards for compensatory damages, punitive damages, emotional damages, costs, attorneys' fees, and additional relief as the Court deems fitting as available under the law.

**Count IV**
(Discrimination in violation of G.L. c. 151B, §4(4) against all Defendants)

68.     Ms. Hussey repeats and incorporates by reference paragraphs 1 through 67 as if set forth fully herein.

69.     By the actions described above, Defendants are in violation of 151B, §4(4).

WHEREFORE, Ms. Hussey requests that judgment be entered in her favor and that relief be granted her as available at law including but not limited to awards for compensatory damages, punitive damages, emotional damages, costs, attorneys' fees, and additional relief as the Court deems fitting as available under the law.

### Count V
(Discrimination in violation of G.L. c. 151B, §4(4A) against all Defendants)

70. Ms. Hussey repeats and incorporates by reference paragraphs 1 through 69 as if set forth fully herein.

71. By the actions described above, Defendants are in violation of 151B, §4(4A).

WHEREFORE, Ms. Hussey requests that judgment be entered in her favor and that relief be granted her as available at law including but not limited to awards for compensatory damages, punitive damages, emotional damages, costs, attorneys' fees, and additional relief as the Court deems fitting as available under the law.

### Count VI
(Discrimination in violation of G.L. c. 151B, §4(16A) against all Defendants)

72. Ms. Hussey repeats and incorporates by reference paragraphs 1 through 71 as if set forth fully herein.

73. By the actions described above, Defendants are in violation of 151B, §4(16A).

WHEREFORE, Ms. Hussey requests that judgment be entered in her favor and that relief be granted her as available at law including but not limited to awards for compensatory damages, punitive damages, emotional damages, costs, attorneys' fees, and additional relief as the Court deems fitting as available under the law.

## JURY DEMAND

Plaintiff demands a trial by jury for all available counts.

Respectfully submitted:

**PLAINTIFF, VIRGINIA HUSSEY**

By her attorneys:

*/s/ Bradford N. Louison*

Bradford N. Louison (BBO#305755)
blouison@lccplaw.com
/s/ Douglas I. Louison
Douglas I. Louison (BBO#545191)
dlouison@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA 02110
(617) 439-0305

August