UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VIRGINIA HUSSEY,<br><br>    Plaintiff<br><br>v.<br><br>EAST COAST SLURRY CO., LLC; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 4; HOISTING AND PORTABLE ENGINEERS APPRENTICESHIP & TRAINING PROGRAM, and SUFFOLK CONSTRUCTION COMPANY, INC.,<br><br>    Defendants. | DOCKET NO: 1:20−CV−11511−MPK |

**DEFENDANT HOISTING AND PORTABLE ENGINEERS
APPRENTICESHIP AND TRAINING PROGRAM'S
OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND HER COMPLAINT**

**I.      Introduction**

Defendant Hoisting and Portable Engineers Apprenticeship and Training Program ("School") respectfully opposes Plaintiff's motion to amend her Complaint pursuant to Fed. R. Civ. P. 16(b). See D. 116 (Plaintiff's motion to amend); D. 117 (Plaintiff's memorandum of law). The motion should be denied for several reasons: (1) there is no good cause to seek such late relief; (2) the amendment would be futile under Chapter 151C's statute of limitations; (3) the Plaintiff failed to exhaust administrative remedies because she never alleged a Chapter 151C violation with the MCAD; (4) this proposed state-law claim would be preempted by ERISA; and (5) the relevant parts of the statute do not apply to the Training Program or the case in any event.

1

## II.     Legal Argument

### A.     Standard of Review

The Court set out the standard of review in its Memorandum and Order on Defendants Union and School's Motion to Amend: "In cases where a district court has issued a scheduling order under Rule 16(b) and the amendment sought contravenes a deadline imposed by the court, Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard….The First Circuit has noted that Rule 16's 'good cause' standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." D. 114, p. 5 (internal quotations and citations omitted).

### B.     The Complaint does not reference M.G.L. c. 151C

Although there is no dispute that Plaintiff did not plead a count under M.G.L. c. 151C in her complaint or amended complaint, Plaintiff now contends that either she "implicitly pled a 151C claim," see D. 117, p. 3-4, or that there is "conflicting indicia" regarding whether Defendants School and Union were on notice of the claim. D. 117, p. 2-3. These arguments must fail, for the reasons set out below.

#### 1.     Plaintiff did not implicitly plead a claim under M.G.L. c. 151C

"The fundamental purpose of our pleadings rules is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Martin v. Tricam Indus., Inc.*, 379 F. Supp. 3d 105, 108 (D. Mass. 2019), quoting *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008). Plaintiff points to case law under 42 U.S.C. § 1983 holding that failure to plead the specific federal or state right defendant interfered with is not fatal to a § 1983 action, for the proposition that "omission of an express 151C claim" may be

excused under liberal pleading standards in Fed. R. Civ. P. 8. However, all of the cases cited[1] are from before Rule 8 pleading standards were narrowed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under the more stringent *Twombly* and *Iqbal* standards, a complaint must provide "enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011), quoting *Twombly*, 550 U.S. at 555. Failing to literally identify a statute at issue until a month before trial necessarily fails to meet that standard. Nor does Plaintiff explain why the pleading standard in a § 1983 claim—which involves specifying one element of a claim (i.e. which federal or state right is at issue)—should apply here, where the pleading omission concerns a separate cause of action altogether.

**2.      The School was not on notice of any M.G.L. c. 151C allegation**

Plaintiff relies on two "conflicting indicia" regarding whether Defendant School was on notice of the claim. D. 117, p. 2-3. The first is a complaint that the Plaintiff made to the Mass. Office of Public Safety in December, 2021, and which the charged parties denied. Just as with its filing during summary judgment, the Plaintiff cited Chapter 151C in a laundry list of statutes, most of which are also not alleged in this case, namely, "In so doing, the program has violated state and federal laws and regulations including but not limited to Title VII, Title IX, Title XXIX, and GL ch. 23, § 11K, and G.L. c. 151B and 151C. 29 CFR 30.3; and 29 CFR § 30.14." Doc. 65, pg. 26. Plaintiff admits that the School did not address this "reference to 151C in their reply memorandum," Memo., pg. 3, because of course why would the School bother making an

---

[1] *Berezin v. Regency Sav. Bank*, 234 F.3d 68, 72 (1st Cir. 2000); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 62 (1st Cir. 1992); *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 622 (1st Cir. 1988); *Siegelman v. Cunard White Star Ltd.*, 221 F.2d 189, 196 (2d Cir. 1955); *Kuba v. Ristow Trucking Co.*, 811 F.2d 1053, 1987 U.S. App. LEXIS 1970 (7th Cir. 1987).

argument about a statute that is not cited in the Complaint, nor actually argued anywhere? Defendants assert that an extraneous reference on page 26 of a brief indicates that the statute is clearly <u>not</u> part of the case, not that it is included. Indeed, other statutes and regulations are also not part of the cause of action, and Defendants are not even sure what "Title XXIX" is a referenced to (possibly Title 29 of the U.S. Code generally).

To be more practical, the Plaintiff has previously participated in filing a Joint Pretrial Memorandum (Doc. 95), proposed jury instructions (Docs. 87 and 117-4), and a jury verdict form (Doc. 85). None of those documents reflect anything about Chapter 151C, the elements of the cause of action, or how the jury should be instructed. The School logically cannot be on notice of a claim that the Plaintiff did not seek to instruct the jury about, or ask for a verdict about.

        **C.**       **There is no "good cause" to amend under Rule 16(b)**

              **1.**       **The appearance of new counsel does not establish good cause**

Plaintiff contends that the appearance of new counsel on December 15, 2022, see D. 113, provides good cause to amend, in particular because upon taking over for retired counsel she spotted that a Chapter 151C claim had not been alleged.

Where prior counsel could have complied with the scheduling order, the appearance of new counsel does not establish "good cause" for an amendment. *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (change of counsel before trial did not establish good cause under Rule 16(b) to reconsider actions taken by previous counsel); see *Emamian v. Rockefeller Univ.*, 823 F. App'x 40, 43 (2d Cir. 2020) ("The desire by new counsel to . . . pursu[e] new damages theories does not amount to 'good cause'" under Rule 16(b)). Consequently, "the substitution of new counsel does not justify failure to

comply with a scheduling order" under Rule 16(b)'s "good cause" standard. *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014); see *Leza v. City of Laredo*, 496 F. App'x 375, 377 (5th Cir. 2012) (same).

This is so because "a party who voluntarily chooses [her] attorney 'cannot . . . avoid the consequences of the acts or omissions of this freely selected agent.'" *Hussain v. Nicholson*, 435 F.3d 359, 364 (D.C. Cir. 2006) (denying extension motion under Rule 16(b) where Plaintiff's former counsel failed to raise legal theories (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962))).[2]

### 2. The late amendment would prejudice defendants

Where a plaintiff fails to establish diligence in seeking to amend a Complaint, the amendment should be denied under Rule 16(b) regardless of the existence of prejudice to the opposing party. *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004). Under Rule 16(b), "[p]rejudice to the opposing party remains relevant but is not the dominant criterion." *Id.*, citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification . . . . If that party was not diligent, the inquiry should end." (internal citation omitted)). For the reasons set out above, Plaintiff was not diligent in raising this new legal theory and the Motion should be denied on that ground. However, the School also argues that the addition of a new legal theory will prejudice the School.

---

[2] Moreover, here successor counsel is affiliated with the same firm, and not all counsel on the case are actually new. Douglas Louison has appeared since the beginning of this matter.

"Moreover, plaintiffs' attempt to assert a new legal theory at this late juncture . . . is unduly prejudicial to defendants who would be required to rebut an additional legal theory without the opportunity to develop additional facts in their defense. Even if the [new legal] claim depends solely on facts already discovered, such that no additional discovery is required, it is fundamentally unfair to require defendants to adjust their defense strategy hard upon the deadline for filing of dispositive motions (and now just before trial)." *Tracey v. Massachusetts Inst. of Tech.*, 332 F.R.D. 50, 52 (D. Mass. 2019) (rejecting the amendment of a complaint to include new legal theories 45 days before the deadline for summary judgment motions (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12-13 (1st Cir. 2004))).

The Defendants did seek to amend their answer almost three months ago. Doc. 105. If the motion had been granted, there would have been no prejudice caused by the delay, other than claims being dismissed for administrative failures. That motion was nonetheless denied. Doc. 114. Today, the Training Program finds itself are drafting and filing an opposition to a motion to amend the Complaint to add new theories with complicated and conflicting legal standards[3] while simultaneously preparing a final joint pre-trial memorandum that is due in two days, with a final pre-trial conference scheduled for only nine days later. If the motion to amend is granted, the parties will have to step back, draft and debate jury instructions and verdict slip, identify the questions of law, and perhaps do so before February 13, 2023, the date of the final pretrial conference.

---

[3] As Judge Saylor noted in 2017, it "is an unsettled question under Massachusetts law what the proper standard is for determining institutional liability for sexual harassment claims made pursuant to ch. 214, § 1C, where those claims are defined by ch. 151C." <u>Harbi v. Massachusetts Inst. of Tech.</u>, No. CV 16-12394-FDS, 2017 WL 3841483, at *5, n. 2 (D. Mass. Sept. 1, 2017).

### D. Plaintiff's proposed amendment is futile

Plaintiff's proposed amendment will be futile because (1) Plaintiff failed to exhaust administrative remedies by timely filing a petition pursuant to M.G.L. c. 151C, (2) the claim would be preempted by ERISA even if there was a colorable violation of Chapter 151C; and (3) the relevant parts of the statute do not apply to Apprenticeship Programs or the circumstances here.

#### 1. Plaintiff failed to exhaust administrative remedies

Even if the Court were inclined to find good cause to excuse the late request for a motion to amend, the claim would be futile because it would have been barred by the statute of limitations even if included in the initial filing with the Court.

Plaintiff seeks to add claims under G.L. c. 151C, §§ 2(g) and 2A(b). Doc. 117-1, ¶ 83 (Proposed Am. Compl.). Before this relief under Ch. 151C is sought in court, a plaintiff must first bring a Chapter 151C claim with the Mass. Commission Against Discrimination. See G.L. c. 151B, § 9 ("Any person claiming to be aggrieved by a practice made unlawful … under chapter one hundred and fifty-one C … may, at the expiration of ninety days <u>after the filing of a complaint with the commission</u>, or sooner if a commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both . . . ") (emphasis added). *Doe v. Bradshaw*, 203 F. Supp. 3d 168, 190 (D. Mass. 2016) (administrative exhaustion requirement applies to claims against vocational schools).[4]

---

[4] The Training Program explains below that is not a "vocational school" under the statute. However, if the Defendant is wrong about this, then the exhaustion requirement applies to it as a vocational school.

Although a charge was filed with the MCAD, nowhere did the charge allege or mention Chapter 151C. See Doc. 23-1. The failure to allege a violation of Chapter 151C means she has never exhausted, or attempt to exhaust, her agency remedies. *Nguyen v. Univ. Of Massachusetts*, 66 Mass. App. Ct. 276, 282 (2006), aff'd on other grounds sub nom. *Nguyen v. William Joiner Ctr. for Study of War & Soc. Consequences*, 450 Mass. 291 (2007) (Ch. 151C raised for first time in court "is barred because it was not made before the Massachusetts Commission Against Discrimination (MCAD). Contrary to the plaintiff's contention, this claim was not encompassed by the allegations of the charges filed with the MCAD, or any investigation that would reasonably be expected to grow out of such charges").

Even if a 151B employment claim could sufficiently allege a 151C educational claim, such claims under Chapter 151C must nonetheless be brought at the MCAD within six months. G.L. c. 151C, § 3(d) ("[a] petition pursuant to this section must be filed with the commission within six months after the alleged unfair educational practice was committed") (emphasis added). Even if Ms. Hussey's charge of discrimination dated April 13, 2020, included or somehow encompassed Chapter 151C allegations, the charge was filed more than six months after she learned she had been removed from the apprenticeship program on August 27, 2019. Her claim is therefore statutorily barred because she failed to file a timely complaint of discrimination under Chapter 151C with the MCAD.

      **2.**      **Plaintiff's proposed M.G.L. c. 151C Count is preempted by ERISA**

Even if her proposed new claims were timely, they would be preempted by ERISA. As discussed in prior filings, see Doc. 91, the School is an employee welfare benefit provided by an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1002(1); see *Merit Const. All. v. City of Quincy*, 759 F.3d 122, 128

(1st Cir. 2014) ("it is important to note that programs 'established or . . . maintained for the purpose of providing…apprenticeship or other training' qualify as ERISA employee welfare benefit plans"); *Associated Gen. Contractors, San Diego Chapter, Inc., Apprenticeship & Training Tr. Fund v. Smith*, 74 F.3d 926, 929 (9th Cir. 1996) ("[a]n apprenticeship program is an employee welfare benefit plan under ERISA . . . ").

ERISA has an explicit and powerful preemption provision that "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" regulated by ERISA. 29 U.S.C. § 1144(a). ERISA preemption applies to state and local efforts to regulate Schools covered by ERISA. *Merit Const. All.*, 759 F.3d at 128 ("ERISA will preempt the Ordinance's operation if and to the extent that the Ordinance bears a sufficient connection to such [apprenticeship] programs"). The broad scope of ERISA preemption is, however, tempered where a Plaintiff proves a violation of both a state law <u>and</u> a parallel federal law. *Iwata v. Intel Corp.*, 349 F. Supp. 2d 135, 157 (D. Mass. 2004) ("Massachusetts state law is only preempted to the extent that it is not congruent with federal civil rights law. . . . Thus, [plaintiff's] state law claim . . . survives, but she can only prevail on it to the extent that she proves that [defendants] violated both [state law] and some parallel federal law . . .").

Plaintiff's proposed Chapter 151C claims are preempted because there is no parallel federal law violation congruent with those claims. Although Plaintiff suggests that her claims are similar to those remaining in Count 1 under Title VII, there is no case law that treats Title VII and M.G.L. c. 151C as parallel. Instead, the courts have typically addressed the relation of M.G.L. c. 151C and <u>Title IX</u>, which governs educational institutions receiving federal money.[5] *Bloomer v. Becker Coll.*, No. CIV.A. 09-11342-FDS, 2010 WL 3221969, at *6 (D. Mass. Aug.

---

[5] The Training Program does not receive federal funds and is not covered by Title IX.

13, 2010) (referring to M.G.L. c. 151C as "the equivalent of Title IX under Massachusetts law"); see, e.g., Doe v. Bradshaw, 203 F. Supp. 3d 168, 189 (D. Mass. 2016) (comparing Title IX and M.G.L. c. 151C claims). Therefore, the "congruence" and "parallel" standard identified in Iwata cannot be met, and preemption is required.

### 3. There is no liability under Chapter 151C

The claim is also futile because liability under the statute is not sufficiently alleged. The first citation in Plaintiff's proposed amended complaint is to G.L. c. 151C, § 2(g). That statute makes it an unfair "educational practice for an educational institution … [t]o sexually harass students in any program or course of study in any educational institution." Sexual harassment is specifically, and narrowly, defined as:

> any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:-- (i) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment.

No agent of the Training Program is charged with requesting sexual favors or other conduct of a sexual nature. Those allegations lie against her Hussey's former co-workers. She does allege that Mike Bowes, who was a trustee of the training program at the time, made certain comments in response to Ms. Hussey's complaints and failing to remedy her complaints, but those comments were not alleged to be "sexual." See generally, proposed Am. Compl., e.g., ¶¶ 34-37.

The allegedly sexual comments of her co-workers are not relevant here, because as one court has previously held, "[t]he plain language of [M.G.L. c. 151C] contemplates a scenario in which the institution itself, through its administrators or employees, acts as the harasser." Doe v. Town of Stoughton, No. CIV.A. 12-10467-PBS, 2013 WL 6498959, at *5 (D. Mass. Dec. 10,

10

2013) (allowing defendants' motion for summary judgment where plaintiff showed harassment by peers); *Harrington v. City of Attleboro*, 172 F. Supp. 3d 337, 352 (D. Mass. 2016) (dismissing plaintiff's claim under M.G.L. c. 151C where plaintiff alleged only peer-to-peer harassment (discussing *Town of Stoughton*, supra)). Therefore, section 2(g) of Chapter 151C simply does not apply here, where Plaintiff was not harassed at the School, as Chapter 151C defines harassment, and was not harassed by administrators or employees of the School (or even fellow students, for that matter).

Second, she also seeks to bring a claim under G.L. c. 151C, §2A(b). Section 2A applies only to "vocational training institutions" (not all educational institutions). While there is no case law explicating this definition, the statutory definition and legislative context indicate coverage of the Training Program is inappropriate. The statute defines the term as including "any educational institution the primary purpose of which is to offer technical, agricultural, business or trade courses or courses of study <u>leading to employment</u> in recognized trades or occupations." G.L. c. 151C, § 1 (emphasis added). But participants in the Training Program are already employed, indeed employed full-time; the program does not eventually "lead to employment." Chapter 151C seeks to cover those institutions where students enroll, learn a trade, and then find a job in that trade upon graduation. That's why discrimination in "placement services" is one of the protected categories for vocational schools in § 2A(b).

Moreover, both state and federal law recognize that there is a difference between apprenticeship programs and vocational programs. Under federal law, there is the Perkins Act that governs secondary and postsecondary vocational programs, and the Fitzgerald Act that governs apprenticeship programs. State law similarly recognizes this. <u>See, e.g.,</u> G.L. c. 151C and G.L. c. 23.

Effective in October 1998, Congress enacted the Perkins Act, which applied to "vocational and technical education schools," which in 1998 were defined as "a public or nonprofit technical institution or vocational and technical education school used exclusively or principally for the provision of vocational and technical education to individuals who have completed or left secondary school and who are available for study in preparation for entering the labor market, if the institution or school admits as regular students both individuals who have completed secondary school and individuals who have left secondary school." 20 U.S.C. § 2302 (as of October 1998). The statute was amended in 2019 to replace the term "vocational" and with "area career and technical education school," though using fundamentally the same definition except updating the use of the term "vocational" to "career and technical education." Separately, in 1937, Congress passed the Fitzgerald Act, which applies to the Training Program, and other apprenticeship programs.[6] 29 U.S.C. § 50. Similarly, and as a result of the Fitzgerald Act, Mass. state law also differently categorize and regulates apprenticeship training. See G.L. c. 23, § 11H.

Therefore, both Congress and the Mass. Legislature understand that vocational training and apprenticeship training are not the same. Vocational training involves attending a school, learning a trade, so that one can subsequently get a job in that field. Apprenticeship training is different, as it involves assuming a full-time job in the field, while taking classes at night and learning on the job as well. Therefore, Chapter 151C's regulation of "vocational" programs simply does not apply to the Training Program.

---

[6] https://www.apprenticeship.gov/about-us/our-history#:~:text=In%201937%2C%20the%20National%20Apprenticeship,Program%20as%20it%20is%20today. (last visited February 4, 2023)

12

### III. Conclusion

For the reasons stated above, Defendant School respectfully request that the Court deny the motion to amend.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | HOISTING AND PORTABLE ENGINEERS APPRENTICESHIP AND TRAINING PROGRAM, |
|  | By its attorneys, |
|  | /s/ James A.W. Shaw<br>James A.W. Shaw, BBO # 670993<br>Ryan McGovern Quinn, BBO # 706172<br>SEGAL ROITMAN, LLP<br>33 Harrison Ave., 7th Floor<br>Boston, MA  02111<br>(617) 603-1432<br>jshaw@segalroitman.com |
| Dated: February 4, 2023 | rquinn@segalroitman.com |

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by First Class Mail on February 4, 2023.

/s/ James A.W. Shaw
James A.W. Shaw