UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VIRGINIA HUSSEY,<br><br>    Plaintiff<br><br>v.<br><br>EAST COAST SLURRY CO., LLC;<br>INTERNATIONAL UNION OF<br>OPERATING ENGINEERS, LOCAL 4;<br>AND HOISTING AND PORTABLE<br>ENGINEERS APPRENTICESHIP &<br>TRAINING PROGRAM,<br><br>    Defendants. | DOCKET NO: 1:20−CV−11511−MPK |

**PLAINTIFF'S OPPOSITION TO DEFENDANT EAST COAST SLURRY'S MOTION FOR JUDMENT AS A MATTER OF LAW**

NOW COMES Plaintiff Virginia Hussey and opposes Defendant East Coast Slurry Co., LLC's Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50 on the following grounds:

    I.    PLAINTIFF HAS MET HER BURDEN TO PUT THE CONTINUING VIOLATION DOCTRINE ISSUE BEFORE THE JURY

At trial, Plaintiff's counsel was precluded from eliciting further testimony from Plaintiff regarding her partial testimony that she talked to "you guys," was not followed up on and, in fact, was immediately objected to by counsel for all defendants and discussed at sidebar. Plaintiff's awareness of having been subjected to a hostile work environment may have come much later, and since the parties stipulated she retained counsel on October 17, 2019, counsel for Plaintiff was unable to elicit further testimony from Plaintiff on this point. Therefore, the jury should not be permitted to consider Plaintiff's partial testimony in the context of the statute of limitations issues before it. (*See Letter/request (non-motion) from Plaintiff Regarding*

*Instruction to Jury/Order to Counsel Regarding Plaintiff's Incomplete Testimony, Dkt.* #167).

Pursuant to Title VII, Hussey must show that Noyes's conduct was substantially related to that of Atkins.  She has done this by her own testimony that the conduct was the same type of conduct she was subjected to by Atkins (comments, repeated and unwanted sexual advances), that the defendants were aware of this conduct through her complaints to Dunn, Bowes, Walker, Cunningham, Jardine and others, and that the defendants continued to inadequately address her repeated complaints by failing to investigate them and failing to act, at all—just as they had in response to her claims about Atkins's conduct.  Plaintiff also testified that her supervisors at East Coast Slurry, including Walker and Bowes, "spoke with" Noyes "four-to-five times" about his harassing conduct.  Both Bowes and Walker testified that they *both* had conversations with Noyes about his sexual advances toward Plaintiff (despite Noyes's denial that Walker had any conversations with him about this issue).  Plaintiff also testified that she continued to complain about Noyes's conduct to Dunn, who continued to do nothing in response.

II. SUFFICIENT EVIDENCE OF AN ADVERSE ACTION BY EAST COAST SLURRY THAT LED TO DEMONSTRABLE HARM TO PLAINTIFF HAS BEEN PRESENTED

While East Coast Slurry purports to argue that it was an innocent bystander, the evidence shows it (through Cary Will) was "completely aware" of the sexual harassment Hussey was being subjected to on its jobsite, that management (Cary Will and Alexis Dunn, as well as Bowes, through his agency-relationship with East Coast Slurry) was regularly involved on calls and in discussions about the harassment and hostile work environment, and had full awareness that its employee was being harassed first by Atkins, then by Noyes (who continued to harass Plaintiff until "the day she was fired" despite having been admonished by Bowes and Walker to leave her alone).  The evidence further shows that despite the continued awareness by East Coast

Slurry that its employee was being harassed, it purposefully chose not to act for fear of jeopardizing its relationships with the union and apprenticeship program.

"Prevailing case law in the First Circuit and elsewhere supports a fairly liberal approach in determining what constitutes an adverse employment action." *Rennie*, 139 F. Supp. 2d at 169; *see Pizarro-Correa v. Puerto Rico Internal Revenue Dep't*, 267 F. Supp. 3d 369, 378 (D.P.R. 2017) (failure to investigate can contribute to hostile work environment).  Trial testimony and evidence show that East Coast Slurry's decision *not* to investigate was a result of a discriminatory animus in that it prioritized its relationship with the union and apprenticeship program over tangling with Plaintiff's sexual harassment by its own employees who were also union members.  Dunn's testimony makes clear that East Coast Slurry did not want to infringe on its contractual agreement or create any discord with the union and apprenticeship program that might cause disruptions to its own operations, and that sexual harassment was one example of East Coast Slurry's ability to terminate union members without prior agreement.  Therefore, Plaintiff has met her burden of establishing "that the adverse employment action was [actually] the result of discriminatory animus." *Che v. Mass. Bay Transp. Auth*., 342 F.3d 31, 39 (1st Cir. 2003).

East Coast Slurry's failure to investigate Hussey's repeated complaints led to demonstrable harm—Plaintiff being subjected to a hostile work environment—and constitutes a materially adverse action, in and of itself. *Maldonado-Cátala v. Municipality of Naranjito*, 255 F. Supp. 3d 300, 320 (D.P.R. 2015), *citing Daniels v. United Parcel Serv*., 701 F.3d 620, 640 (10th Cir. 2012); *see Thurston v. Henderson*, 230 F.3d 1347 (1st Cir. 2000) (failure by an employer to take remedial steps may constitute improper behavior, subjecting it to liability); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721-22 (2nd Cir. 2010) (a plaintiff

who objects to some discriminatory act and then is targeted by a colleague could experience an adverse employment action if the employer refused to investigate the colleague). "Under Massachusetts Supreme Judicial Court and First Circuit law, in addition to supervisory liability, an employer is vicariously liable if it knows or should have known of harassment by a non-supervisory co-worker and then fails to promptly implement corrective action." *Payne-Callender v. Gavin*, No. 19-11286-RGS, 2021 U.S. Dist. LEXIS 25356, at *13 (D. Mass. Feb. 10, 2021). An employer may also be liable for punitive damages for its failure to sufficiently remedy harassment if that failure was outrageous or egregious. *See Gyulakian v. Lexus of Watertown, Inc.*, 475 Mass. 290, 298-299, 56 N.E.3d 785 (2016). "[T]he failure to remedy alleged discrimination also can arise where the employer purports to investigate the discrimination, but does so in an inadequate manner." *Id*. at 301-302. Here, East Coast Slurry had been aware of Plaintiff's complaints of harassment early on, and still refused to investigate subsequent complaints, including telling Plaintiff the Union was handling it, due to its prioritization of its relationship with the union over the protection of its female employee—an inference that is readily supported by Dunn's testimony regarding East Coast Slurry's decision not to fire Atkins—who she believed was continuing to harass Plaintiff and who East Coast Slurry could have terminated immediately—and instead develop a "plan" to send him to the yard where Plaintiff continued to encounter him. (*See* Atkins's, Hussey's and Walker's testimony that employees come and go from the yard.) Additionally, the jury can reasonably infer that East Coast Slurry's "complete awareness" and involvement with the jobsite included Bowes's discussions with Plaintiff, Walker's discussions with Plaintiff, Walker's and Bowes's discussions with Noyes, and the Board's discussions and decision to terminate Plaintiff notwithstanding the ongoing sexual harassment she complained she was experiencing, thereby resulting in multiple

subsequent failures to investigate Plaintiff's complaints prior to her dismissal. Simply because East Coast Slurry effectively utilized the Board of Trustees and the Union as Plaintiff's supervisors, giving it the powers of hiring, firing and disciplining East Coast Slurry employees, does not absolve them of their "complete awareness" of violations of their employee's civil rights. The evidence demonstrates that its sexual harassment and anti-harassment policies permitted complaints to be made to just about anyone, including to "any management with whom he or she may feel comfortable with," and provided that employees "may also talk directly with their Supervisor or Foreman." (Ex. 2 at 7-9). with whom an employee felt "comfortable," Yet, Dunn testified that it had no formal procedure for any complaints made to jobsite management—i.e., Plaintiff's multiple complaints to Walker, and to Bowes—to be handled according to its own policies.

Along with the other evidence of pretext, the jury is entitled to consider whether East Coast Slurry's failure to investigate revealed a desire to minimize disruption caused by Plaintiff's repeated complaints of sexual harassment, and whether its failure to take action when it learned that Plaintiff was about to be ejected from its jobsite by the union president was similarly motivated. At the least, its "complete awareness" and regular communications with Bowes and Walker should have prompted further investigation, such as questioning others assigned to Winthrop Square or "the yard." *See Davignon v. Hodgson*, 524 F.3d 91, 107 (1st Cir. 2008), *citing American Postal Workers Union v. United States Postal Serv.*, 265 U.S. App. D.C. 146, 830 F.2d 294, 311 (D.C. Cir. 1987) (noting employer's failure to investigate further in face of conflicting evidence strongly suggested asserted reason for taking adverse action was pretext). East Coast Slurry had the power to terminate employees notwithstanding any input from the

union or apprenticeship program, and failed to do so for months with respect to Atkins, and at all with respect to Noyes.

Additionally, through its relationship with the Union and Apprenticeship program, as well as its express permission to Bowes to manage its workers on its jobsite, *East Coast Slurry did, indeed, terminate Plaintiff.* Bowes testified that he was responsible for solving problems with apprentices on East Coast Slurry's jobsite, and Dunn's, Bowes's and Hussey's testimony demonstrates that Bowes was the individual who effected her termination from East Coast Slurry while acting within the scope of his agency powers specifically granted or delegated to him by East Coast Slurry. While East Coast Slurry argues Bowes wore only one hat—the union's—the evidence is clear that he wore three: the union's, the apprenticeship program's and East Coast Slurry's. East Coast Slurry cannot hide behind its collective bargaining agreement with the union and feign impotence with respect to its own employees. East Coast Slurry's actions, through its agents, *and* through its total failure to act—including to investigate—warrant jury consideration of its liability for its own employees' harassment, including punitive damages.

WHEREFORE, Plaintiff requests the Court DENY Defendant East Coast Slurry's Motion for Judgment as a Matter of Law (#165).

Respectfully submitted:

**PLAINTIFF, VIRGINIA HUSSEY**

By her attorney:

*/s/ Alexandra M. Gill*
Douglas I. Louison (BBO #545191)
dlouison@lccplaw.com
Alexandra "Sasha" M. Gill (BBO #663040)
sgill@lccplaw.com
Joseph A. Mongiardo (BBO #710670)
jmongiardo@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
Ten Post Office Square, Suite 1330
Boston, MA 02109
(617) 439-0305

**CERTIFICATE OF SERVICE**

I certify that on this date, the foregoing document filed through the USDC-MA PACER/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Alexandra M. Gill*
Alexandra M. Gill

Dated: March 19, 2023